LUIS A. AYON, ESQ.
Nevada Bar No. 9752
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
**MAIER GUTIERREZ AYON**
2500 West Sahara Avenue, Suite 106
Las Vegas, Nevada 89102
Telephone: (702) 629-7900
Facsimile: (702) 629-7925
E-mail:     laa@mgalaw.com
            jag@mgalaw.com

*Attorneys for 7912 Limbwood Court Trust*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| 7912 LIMBWOOD COURT TRUST, a Nevada Trust,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a National Association; MTC FINANCIAL INC. dba TRUSTEE CORPS, a foreign corporation; REPUBLIC SERVICES, INC., a Foreign Corporation; SANDRA J. NEWTON, individually; SONYA D. NEWTON, individually; DOES I through X; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No.: 2:13-cv-00506-PMP-GWF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT, WELLS FARGO BANK, N.A.'s MOTION TO DISMISS WITH PREJUDICE THE PLAINTIFF'S COMPLAINT AND COUNTERMOTION FOR SUMMARY JUDGMENT** |

Plaintiff 7912 Limbwood Court Trust ("Plaintiff"), by and through its attorneys of record, the law firm MAIER GUTIERREZ AYON, hereby files this opposition to defendant Wells Fargo Bank, N.A.'s ("Defendant" or "Wells Fargo") motion to dismiss with prejudice the Plaintiff's complaint [Dkt. #11] ("Opposition") and countermotion for summary judgment (the "Countermotion"). This Opposition and Countermotion are made and based on the following

/ / /

/ / /

/ / /

1

memorandum of points and authorities, the papers and pleadings on file herein and any oral arguments the Court may entertain.

DATED this 15th day of April, 2013.

> Respectfully submitted,
>
> **MAIER GUTIERREZ AYON**
>
> */s/ Luis A. Ayon*
> _____
> LUIS AYON, ESQ.
> Nevada Bar No. 9752
> JOSEPH A. GUTIERREZ, ESQ.
> Nevada Bar No. 9046
> 2500 W. Sahara Ave, Suite 106
> Las Vegas, Nevada 89102
> *Attorneys for Plaintiff 7912 Limbwood Court Trust*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This lawsuit involves real property in which the parties do not dispute any of the facts in this case and the central issue before the district court is whether an HOA foreclosure sale extinguishes junior liens such as a first of deed of trust.

Nevada law unequivocally provides homeowner associations in Nevada with an *automatically* perfected lien for unpaid assessments that is *superior* to all other mortgage holders *including* the first deed of trust. Nevada law provides that the failure of a homeowner or anyone else claiming an interest in the subject property to pay homeowner assessments faces the risk of losing the subject property or their security interest by way of a non-judicial foreclosure sale.

Plaintiff purchased the Property at a non-judicial foreclosure sale pursuant to NRS 116.3116, *et seq.*, after defendants failed to take any action to pay the uncollected homeowner assessments. Plaintiff filed this lawsuit to: (1) quiet title against the first deed of trust holder and any other junior lien holders; and (2) enjoin any party from foreclosing on the Property during the duration of this lawsuit. The facts of this lawsuit are uncontested and a determination is ripe to be made as a matter of law. Nevada law, in conjunction with recent governmental opinions, clearly

2

1  provide that the district court should grant summary judgment in favor of Plaintiff and declare that
2  an HOA super-priority lien extinguishes all junior liens post foreclosure.

3  **II.   OPPOSITION TO MOTION TO DISMISS**

4      **A.   STATEMENT OF FACTS IN OPPOSITION TO MOTION TO DISMISS**

5  For purposes of this opposition to defendant Wells Fargo's motion to dismiss, Plaintiff
6  adopts the movant's statement of facts and joins in their request for judicial notice [Dkt. #11 and
7  Dkt. #12].

8  Further, Plaintiff adds that the Property is subject to a set of CC&Rs recorded by the
9  Elkhorn Community Association ("Elkhorn Community HOA"). *See* Compl. [Dkt. #1] at ¶ 13.
10 The recording of the CC&Rs by the Meadows HOA was *prior* to defendant Wells Fargo recording
11 its deed of trust (the "Wells Fargo DOT").

12 Plaintiff acquired the Property on or about March 6, 2012, by successfully bidding on the
13 Property at a publicly held foreclosure action in accordance with NRS 116.3116, *et seq*. The
14 foreclosure deed was then recorded in the Official Records of the Clark County Recorder as
15 Instrument No. 201203160001230 (the "Deed"). *See id.*, at ¶ 4.

16 On or about March 8, 2013, defendant Trustee Corps sold the Property despite a pending
17 motion to enjoin the foreclosure sale. *See* Proposed Order to Show Cause, which is attached hereto
18 as **Exhibit "1."**

19 Defendant Trustee Corps removed the case to federal court [Dkt. #1] while the order to
20 show cause hearing was pending.

21 These above facts are uncontested and undisputed, and for the purposes of this opposition
22 must be accepted as true. *See Knievel v. ESPN*, 363 F.3d 1068, 1072 (9th Cir. 2005) ("[w]hen
23 ruling on a motion to dismiss, we accept all factual allegations in the complaint as true and construe
24 the pleadings in the light most favorable to the nonmoving party"].

25     **B.   LEGAL ARGUMENT IN OPPOSITION TO MOTION TO DISMISS**

26         ***1.   Standard of Review for FRCP 12(b)(6) Motion to Dismiss***

27 When a district court dismisses a claim pursuant to a FRCP 12(b)(6) motion, "we evaluate
28 the complaint de novo to decide whether it states a claim upon which relief could be granted …."

*Gonzales v. Metro. Transp. Auth.,* 174 F.3d 1016, 1018 (9th Cir. 1999). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996).

The district court's review of a FRCP 12(b)(6) motion is limited to the contents of the complaint. *See Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 552 (9th Cir. 1984). If matters outside the pleadings are submitted, a motion to dismiss under FRCP 12(b)(6) is treated as one for summary judgment. *See id.* When a FRCP 12(b)(6) motion is converted into one for summary judgment, the district court must sufficiently inform the nonmoving party of that fact and afford the nonmoving party a reasonable opportunity to present all pertinent material. *See Garaux v. Pulley,* 739 F.2d 437, 438 (9th Cir. 1984).

### 2. The HOA Assessments Have Priority Over Wells Fargo's DOT

The creation of a common-interest community is by statute and must be recorded in the same manner as other interests in real property. *See* NRS 116.2101.

NRS 111.320 states that recording an interest in real property is notice to all subsequent purchasers and mortgagees that they take and purchase with notice of prior liens against the real property. *See* NRS 111.320.

The Nevada legislature enacted NRS 116.3116 to protect Nevada homeowners associations by ensuring their ability to collect delinquent assessment liens. Pursuant to NRS 116.3116, a homeowners association (or HOA) has a statutory lien against a unit owner's real property for delinquent assessments. The recordation of the HOA's Declaration of Covenants, Conditions and Restrictions "constitutes record notice and perfection of the lien." NRS 116.3116(4). As such, "[n]o further recordation of any claim of lien for assessments [under 116.3116] is required." *Id.*

In addition to automatic perfection and notice, a lien for delinquent assessments is entitled to priority over virtually all security interests in the property, including a first recorded deed of trust, "to the extent of the assessments of common expenses based on the periodic budget adopted by the Association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the nine (9) months immediately preceding institution of an action to enforce the lien." *Id.* This lien is frequently referred to as the "Super Priority Lien."

4

1  The Super Priority Lien has its genesis in the 1977 Uniform Condominium Act, as amended
2 in 1980 (the "UCA").  Pursuant to UCA § 3-116, a delinquent assessment lien is "also prior to the
3 mortgages and deeds of trust described in clause (ii) above to the extent of the common expenses
4 …which would have become due in the 6 months immediately preceding the institution of an action
5 to enforce the lien."  *See* **Exhibit 2**, UCA, 3-116.  The Comments provided with this section are
6 telling:

> To ensure prompt and efficient enforcement of the association's lien for unpaid assessments, such liens should enjoy statutory priority over most other liens…  A significant departure from existing practice, the 6 months' priority for the assessment lien strikes an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interest of mortgage lenders. As a practical matter, mortgage lenders will most likely pay the 6 months' assessments demanded by the association rather than having the association foreclose on the unit … since this provision may conflict with the provision of some state statutes which forbid some lending institutions from making loans not secured by first priority liens [state law should be consulted].

*Id.*

15  This language found its way into the Uniform Planned Community Act in 1980 (the
16 "UPCA"), drafted by the National Conference of Commissioner of Uniform State Laws.  *See*
17 **Exhibit 3**, UPCA 3-116.   The Super Priority Lien was then included in the 1982 Uniform
18 Common-Interest Community Ownership Act ("UCIOA"), which was then adopted by the Nevada
19 legislature in 1991 as the Nevada Uniform Common-Interest Community Ownership Act, NRS
20 Chapter 116.

21  Pursuant to Nevada law, an HOA is entitled to pursue non-judicial foreclosure of delinquent
22 assessment liens.  NRS §§ 116.31162-116.31168.  In order to pursue non-judicial foreclosure, an
23 HOA is required to mail a copy of the notice of default and election to sell to, among others, "[a]ny
24 holder of a recorded security interest encumbering the unit's owner's interest."  NRS 116.31163(2).
25 Following the foreclosure sale, the person conducting the sale issues a deed to the purchaser.  NRS
26 116.31164(3).  The recitals in this deed regarding "[d]efault, the mailing of the notice of delinquent
27 assessment, …the recording of the notice of election to sell … and the giving notice of sale, are

conclusive proof as to the matters recited." NRS 116.31166(1)(a)-(c). The deed containing such recitals is "conclusive against the former owner … and all other persons." NRS 116.31166(2).

### 3. An HOA's Super priority Lien Cannot Be Waived Or Subordinated By The CC&Rs.

Defendant argues that its deed of trust was not extinguished by the HOA foreclosure sale because HOA is subordinate based on the CC&Rs. The HOA however, cannot waive its right to a super priority lien in its CC&Rs. Pursuant to NRS 116.1104, the provisions of NRS 116 cannot be waived: "Except as expressly provided in this chapter, <u>its provisions may not be varied by agreement, and rights conferred by it may not be waived</u>." NRS 116.1104 (emphasis added).

NRS 116.1206 further provides that any provision of an HOA's CC&Rs that violates the provisions of NRS 116 "shall be deemed to conform" with NRS 116 and "[i]s superseded" by the provisions of NRS 116:

> 1. Any provision contained in a declaration, bylaw or other governing document of a common-interest community that violates the provisions of this chapter:
>
>    (a) Shall be deemed to conform with those provisions by operation of law, and any such declaration, bylaw or other governing document is not required to be amended to conform to those provisions.
>
>    (b) Is superseded by the provisions of this chapter, regardless of whether the provision contained in the declaration, bylaw or other governing document became effective before the enactment of the provision of this chapter that is being violated.
>
> 2. In the case of amendments to the declaration, bylaws or plats of any common-interest community created before January 1, 1992:
>
>    (a) If the result accomplished by the amendment was permitted by law before January 1, 1992, the amendment may be made either in accordance with that law, in which case that law applies to that amendment, or it may be made under this chapter; and
>
>    (b) If the result accomplished by the amendment is permitted by this chapter, and was not permitted by law before January 1, 1992, the amendment may be made under this chapter.

Statutory interpretation begins with the plain language of the statute, and "[w]hen the language of a statute is plain and unambiguous, a court should give that language its ordinary

6

1  meaning and not go behind it." *City Counsel of Reno v. Reno Newspapers,* 105 Nev. 886, 891, 784
2  P. 2d 974, 977 (1989); *see Carson- Tahoe Hosp. v. Bldg. & Constr. Trades*, 122 Nev. 218, 220, 128
3  P. 3d 1065, 1066-1067 (1006)(courts should look no further if the words have definite and ordinary
4  meaning or it is clear the meaning is not intended); *City of Reno v. Bldg. & Constr. Trades*, 127
5  Nev. --,--, 251 P.3d 718, 722 (2011)("When a statute uses words that have a definite and plain
6  meaning, the words will retain that meaning unless it clearly appears that the Legislature did not
7  intent such a meaning.")

8  The language of NRS 116.1104 is clear – the CC&Rs cannot waive the provisions of
9  Chapter 116 unless expressly provided for by statute. Plaintiff is unaware of any statutory authority
10 allowing the CC&Rs to waive provisions of NRS 116.3116 or the right to a super-priority lien.[1]
11 Similarly, the language of NRS 116.1206 requires the conflicting provisions of the CC&Rs be
12 "deemed to conform: and that they are superseded by NRS 116.3116.

13 In *Boulder Oaks Cmty. Ass'n v. B & J Andrews Enterprises, LLC*, the Nevada Supreme
14 Court held that when there are conflicts between CC&Rs and NRS 116, the statute controls and any
15 conflicts will not be enforced. 125 Nev. 397, 406, 215, P.3d 27, 32-33 (2009)("When NRS 116.003
16 is read in context with the UCIOA, it is clear that when a term is definite in NRS Chapter 116, the
17 statutory definition controls and any definition that conflicts will not be enforced.") The Court
18 explained, "any other reading of the statute would be contrary to the express purpose of NRS
19 Chapter 116, which is to 'make uniform the law with respect to the subject of this chapter among
20 states enacting it.'" *Boulder Oaks Comty. Ass'n*, 125 Nev. 397, 406, 215 P.3d 27 at 33 (internal
21 citations omitted); *see also Senior Futures, LLC v. Silvestri*, 2004 WL 114456, *3 (Conn. Super. Ct.
22 2004)(unpublished opinion)(holding that [the HOA statute] prohibits any variation of the statute
23 even by agreement or waiver).

24 For the CC&Rs to trump NRS 116.3116 and effectively subordinate the HOA's super
25 priority lien, there must be one of two scenarios: either (1) NRS 116 would need to expressly

---

27 [1] While the HOA may choose not to enforce it rights in any given circumstance, it may not waive them carte blanche in the CC&Rs. *See, e.g.* NRS 116.3102 (3)[Effective January 1, 2012] (granting the executive board the right to determine
28 whether to commence an action for violating the CC&Rs depending on the specific facts and circumstances). Here, rather than elect to forego its rights, the HOA chose to act to enforce its statutory super-priority lien.

provide for the waiver of the super priority lien or (2) the HOA's CC&Rs would need to have been adopted before January 1, 1992 and a waiver of the HOA's lien priority was permitted by law at that time. Neither of those scenarios is present here.

Defendant does not point to the section of NRS 116 that expressly allows an HOA to waive its super-priority lien. Defendant does not allege that the HOA's CC&Rs were adopted before January 1, 1992 or that a waiver of the HOA's lien priority was permitted by law at that time. In this case, the CC&Rs were adopted in 1995. The CC&Rs in this case simply do not control. Any lender who funded a loan and secured it with a deed of trust on a property after January 1, 1992 is on notice of the super priority lien and that no agreement in the CC&Rs will subordinate the HOA's super-priority lien to a first deed of trust. Accordingly, the HOA foreclosure sale extinguished Defendant's first deed of trust, and Defendant's motion to dismiss should be denied.

**III. COUNTERMOTION FOR SUMMARY JUDGMENT**

    **A. INTRODUCTION**

The following statements of Nevada law are undisputed:

    (i) the Nevada legislature intended that HOAs be vested with the power to foreclose on property for unpaid assessments;

    (ii) Nevada is race notice state, which allows superior liens to extinguish junior liens;

    (iii) Nevada has a substantial interest in disposition of real property, and by operation of law, real property can be transferred from one entity to another (*i.e.*, foreclosure sales, adverse position, condemnation, etc.) – indeed, recent governmental actions are consistent with this public policy;

    (iv) NRS 116.3115 is based on the uniform act, which intended for an HOA foreclosure sale to extinguish junior liens, such as a first deed of trust; and

(v)   when the HOA super-priority lien was extended from six to nine months, the drafters of the uniform act expected lenders to pay this assessment rather than lose their lien.

For these reasons as well as the reasons outlined below, the district court has a substantial basis, including authoritative opinions (both based on Nevada law and recent governmental actions) for it to uphold long standing Nevada law and policy that priority of liens is based on race notice.

There is no reason for the district court to allow financial institutions to continue to circumvent an HOA's ability to collect assessments. Without an order from the district court quieting title in favor of Plaintiff, financial institutions will continue to disregard Nevada law and ignore HOA assessments on distressed properties, thereby causing further and substantial harm to Nevada communities.

**B.   LEGAL ARGUMENT**

*1.   Standard of Review for Summary Judgment*

Summary judgment is required under FRCP 56(c) when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact. *See Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial. *See id.* at 323-24, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*2.   The Foreclosure of an HOA Lien Based on Delinquent Assessments Extinguished Wells Fargo's Junior Lien*

It is well settled that the foreclosure of a superior security interest in real property extinguished all junior interests. *See Brunzell v. Lawyers Title Ins. Corp*., 101 Nev. 395, 705 P.2d 642 (1985); *Erikson Construction Co. v. Nevada Nat. Bank*, 89 Nev. 350, 352, 513 P.2d 1236, 1238

1  (1973).

2  As set forth above, Nevada law affords a delinquent assessment lien super-priority over the
3  first deed of trust. Accordingly, the foreclosure of a delinquent assessment lien extinguishes all
4  junior interests, including a first deed of trust.

5  The Nevada Supreme Court has not directly addressed the issue of the priority of a
6  delinquent assessment lien over a first deed of trust. However, the Washington Court of Appeals
7  recently published an opinion that is directly on point. In that case, *Summerhill Village
8  Homeowners Association v. Roughly*, 270 P.3d 639, 166 (Wash. Ct. App. 2012),[1] the court ruled
9  that an association's foreclosure of its super-priority delinquent assessment lien completely
10 extinguished a first deed of trust.

11 The *Summerhill* court ruled that when an association initiates a foreclosure sale to enforce
12 its super-priority lien, the foreclosure sale extinguishes any interest held by a first deed of trust. *See
13 id.* The court explained the legal underpinnings of its ruling in an extremely detailed analysis, an
14 excerpt of which is as follows:

> As a general rule, the priority of competing lien claims depends on the order in which the claims attach to the encumbered property. One exception to this rule is found in the Washington Condominium Act (act), which provides that a condominium association automatically levies an assessment lien against the unit from the time the assessment is due. The assessment lien has priority to all other liens and encumbrances, except for a unit's mortgage recorded before the date the assessment became delinquent. The act further provides that the association's lien has priority to a mortgage (including a deed of trust) when the lien is for assessments that cover common expenses. The reasoning for this was when drafting the condominium statute, the Washington legislature expected that, as a practical matter, lenders would most likely pay the association assessments rather than have the association foreclose its lien on the unit and eliminate the lender's mortgage lien.

24 *See id.* at 640-41.

25 This expectation demonstrates that while the legislature may not have thought that mortgage

---

[1] A copy of *Summerhill Village Homeowners Association v. Roughly*, 270 P.3d 639, 166 (Wash. Ct. App. 2012), is attached hereto as **Exhibit "4."**

10

lenders would allow an assessment lien to foreclose, the intention of the legislature was to motivate the mortgage lender to pay off the assessment lien or have their lien extinguished. *See* Section 5, *supra*.

Moreover, the *Summerhill* court repeatedly recognized that the first deed of trust holder (i) was notified of the HOA's foreclosure action, and (ii) could have taken action to protect its security interest by paying off the assessment lien, but decided to do nothing. *See id.* As the *Summerhill* court observed:

> Under the condominium statute, the association's 2008 assessment lien on Roughley's unit had priority over the 2006 MERS deed of trust because the association's lien was for assessments that cover common expenses. MERS was notified of the foreclosure action, but GMAC, as the loan servicer, did not attempt payment of the assessment lien prior to the sheriff's sale, and the sale extinguished the 2006 deed of trust.

*See id.*

This fact led the *Summerhill* court to ultimately conclude that the deed of trust holder showed a "lack of diligence," which for the deed of trust holder meant unexpected consequences. *See id*.

*Summerhill* is directly on point with this case. The Washington statute upon which the *Summerhill* court based its decision is clearly based upon the Uniform Common Interest Community Ownership Act ("UCIOA"), which is the exact same statute upon which NRS 116.3116 is based.

Under both versions of the statute, an association's lien for common assessments has priority over deeds of trust recorded before the lien arises. *Cf*., NRS 116.3116(2) with RCW 64.34.362. *See* **Exhibit 5**, a copy of RCW 64.34.362. As the *Summerhill* court noted, this is often termed "super-priority." *See Summerhill*, 270 P.3d at 640.

Defendants in the present case, just like the mortgagees in *Summerhill*, were provided with notice of the foreclosure sale, yet chose not to take any action whatsoever to protect their interest in the Property.

/ / /

/ / /

### 3. *A First Deed of Trust Surviving a Foreclosure Sale Would Eviscerate the Intent of NRS 116.3115, et seq.*

It is undisputed that the intent of NRS 116.3115, *et seq.,* was to vest a homeowner association with the power to foreclose should a homeowner fail to pay homeowner assessments. The interplay with NRS 107.080 is such that distressed real property would likely be foreclosed upon by a lender pursuant to NRS 107 prior to a homeowner association being able to foreclose under NRS 116. The timeframe for a foreclosure under NRS 107 is shorter than the nine months of delinquent assessments a homeowner association would wait until taking action under NRS 116 *then* commencing a foreclosure under NRS 116. *See, e.g.,* NRS 107.080 (the time period for a non-judicial foreclosure under NRS 107 is approximately 127 days).

Should a first deed of trust survive an HOA foreclosure sale, homeowners associations will not have any ability to recover and first mortgage lenders will have absolutely zero incentive to pay homeowner assessments on distressed real estate. Allowing lenders to escape this liability will cause lenders to continue the practice of sitting idly by and not foreclosing on distressed property. This also serves as another disservice to Nevada communities by shifting tax, sewer and homeowner assessment obligations to the borrower.[2] In fact, a decision by the homeowner to pay the assessments knowing that homeowner associations have no ability to collect these fees from banks and lenders, or foreclose, would be a violation of the business judgment rule under applicable circumstances. As such, any decision allowing a first deed of trust to encumber the Property *after* an HOA foreclosure sale would eviscerate the intent of the Nevada Legislature to vest power to Nevada homeowner associations to collect at a minimum nine months of unpaid assessments.

### 4. *The Drafters of the 2009 Amendment to NRS 116.3116 Expected the lenders to Pay Any Delinquent HOA Assessments Rather than Risk Losing Their Lien*

On October 1, 2009, an amendment by the Nevada Legislature to NRS 116.3116 became

---

[2] For example, even though an HOA can recover nine months of unpaid assessments, the homeowner (the borrower; not the bank) is still liable for the uncollected assessments.

1  effective, which extended the enforcement period by homeowner associations of their super-priority
2  lien from six to nine months. *See* **Exhibit 6**, legislative history of NRS 116.3116.

3        This amendment was in connection with the Uniform Common Interest Ownership Act (the
4  "UCIOA"), which was drafted by the National Conference of Commissioners on Uniform State
5  Laws and was enacted in Nevada and seven other states (Alaska, Colorado, Connecticut, Delaware,
6  Minnesota, Vermont and West Virginia).

7        The UCIOA applies to residential subdivisions and residential condominium projects that
8  include common elements. As drafted in the Uniform Act, the super-priority lien converted a
9  period of six months of delinquent assessments.

10        The drafters of the UCIOA explained the super-priority provision as follows [quoted above
11  as well in Section 2]:

> A significant departure from existing practice, the 6 months' priority for the assessment lien strikes an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of the lenders. <u>As a practical matter, secured lenders will most likely pay the 6 months' assessments demanded by the association rather than having the association foreclose on the unit</u>.

16  *See id; see also* Section 2, *supra.* (Emphasis added).

17        The Nevada Legislature expected that mortgage lenders would protect their interests by
18  paying off assessment liens rather than having their security interests extinguished by an HOA's
19  foreclosure of its super-priority lien for delinquent assessments. *Id.* This is a reasonable conclusion
20  because it explains why the legislature gave assessment liens a "super-priority" designation. This
21  also makes good public policy sense, as the only way to ensure that the Associations would be able
22  to collect on their assessment liens is to give them priority status so that the mortgage lender would
23  have to pay the assessment lien or face the prospect of having their interest extinguished.

24        In fact, the Nevada Legislature specifically contemplated this result. In 2009, Assembly Bill
25  No. 361 – the bill that introduced NRS 116.310312 – was presented and ultimately passed and
26  ratified. Section 3 of the bill provides that "a lien for such maintenance and abatement services has
27  priority over a first security interest on the unit." *See* **Exhibit 7**, Assembly Bill No. 361 as Enrolled
28  at pg. 1, Section 3 to Legislative Counsel's Digest. It is clear, to the extent the HOA's Lien is

1 comprised of changes incurred under NRS 116.310312, the foreclosure of a HOA Lien wiped out
2 Wells Fargo Banks' deed of trust.

### 5. *The Nevada Department of Business and Industry Real Estate Division has Stated that an HOA Foreclosure Sale Extinguishes a First Deed of Trust*

The Department of Business and Industry Real Estate Division recently issued an opinion with respect to an HOA's super-priority lien and foreclosure sales under NRS 116.3116, *et seq*. The relevant portions of that opinion are as follows:

> Having established that the association has a lien on the unit as described in subsection (1) of NRS 116.3116, we now turn to subsection (2) to determine the lien's priority in relation to other liens recorded against the unit. The lien described by NRS 116.3116(1) is what is referred to in subsection (2). Understanding the priority of the lien is an important consideration for any board of directors looking to enforce the lien through foreclosure or to preserve the lien in the event of foreclosure by a first security interest.
>
> NRS 116.3116(2) provides that the association's lien is prior to all other liens recorded against the unit *except:* liens recorded against the unit before the declaration; first security interests (first deeds of trust); and real estate taxes or other governmental assessments. There is one exception to the exceptions, so to speak, when it comes to priority of the association's lien. This exception makes a portion of an association's lien prior to the first security interest. The portion of the association's lien given priority status to a first security interest is what is referred to as the "super priority lien" to distinguish it from the other portion of the association's lien that is subordinate to a first security interest.
>
> <u>The ramifications of the super priority lien are significant in light of the fact that superior liens, when foreclosed, remove all junior liens. An association can foreclose its super priority lien and the first security interest holder will either pay the super priority lien amount or lose its security.</u> NRS 116.3116 is found in the Uniform Act at § 3-116. Nevada adopted the original language from § 3-116 of the Uniform Act in 1991. From its inception, the concept of a super priority lien was a novel approach. The Uniform Act comments to § 3-116 state:
>
>> [A]s to prior first security interests the association's lien does have priority for 6 months' assessments based on the periodic budget. A significant departure from existing practice, the 6 months' priority for the assessment lien strikes an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for

14

> protecting the priority of the security interests of lenders. As a practical matter, secured lenders will most likely pay the 6 months' assessments demanded by the association rather than having the association foreclose on the unit. If the lender wishes, an escrow for assessments can be required.
>
> This comment on § 3-116 illustrates the intent to allow for 6 months of assessments to be prior to a first security interest. The reason this was done was to accommodate the association's need to enforce collection of unpaid assessments. The controversy surrounding the super priority lien is in defining its limit. This is an important consideration for an association looking to enforce its lien. <u>There is little benefit to an association if it incurs expenses pursuing unpaid assessments that will be eliminated by an imminent foreclosure of the first security interest. As stated in the comment, it is also likely that the holder of the first security interest will pay the super priority lien amount to avoid foreclosure by the association.</u>

*See* **Exhibit 6**. (Emphasis added).

As stated above, the lender has obligation to preserve its interest in real property and pay HOA dues if the borrower fails to do so. Without this penalty, a lender can simply ignore any obligation and there would be little benefit to the HOA under NRS 116.3116, *et seq.*

Defendants had an opportunity to pay the HOA dues and failed to do so despite being noticed of the sale. Defendants had an absolute obligation to protect their interest in the Property, but failed to do so.

The recent opinion by the Department of Business and Industry Real Estate Division makes clear that the district court should enter an order quieting title to the property in favor of Plaintiff. Furthermore, the Nevada Supreme Court has held that the Real Estate Divison and the Commission for Common Interest Communities and Condominium Hotels ("CCICCH") "are responsible for regulating and administering [NRS Chapter 116]." *Dep't of Bus. & Indus. v. Nev. Ass'n Serv., Inc.*, 128 Nev. Adv. Op. 34, * 4, --- P.3d --- (2012). The Nevada Supreme Court also noted as follows:

> NRS Chapter 116 also addresses the issuance of advisory opinions, stating that "[t]he [Real Estate] Division shall provide by regulation for the filing and prompt disposition of petitions for declaratory orders and advisory opinions as to the applicability or interpretation of: (a) [a]ny provision of [NRS 116] or chapter 116A or 116B of NRS.

*Id*. (emphasis added); see also NRS 116.623(1)(a).

/ / /

15

1    Importantly, the Nevada Supreme Court went on to hold that "the responsibility of
2 determining which fees may be charged, the maximum amount of such fees, and ***whether they***
3 ***maintain a priority***, rests with the Real Estate Division and the CCICCH."  *Nev. Ass'n Serv., Inc.*,
4 128 Nev. Adv. Op. 34, * 4 (emphasis added).  Additionally, the Nevada Supreme Court has
5 repeatedly held that courts should attach substantial weight to an administrative body's
6 interpretation of statutes it is charged to enforce.  *See Folio v. Briggs*, 99 Nev. 30, 33, 656 P.2d 842,
7 844 (`983) citing *Clark Co. Sch. Dist. V. Local Gov't*, 90 Nev. 442, 530 P.2d 114 (1974) and *Sierra*
8 *Pac. Power v. Dep't of Taxation*, 96 Nev. 295, 607 P.2d 1147 (1980).

9    Because the Real Estate Division is responsible for regulating, administering, and
10 interpreting Chapter 116 – including priority of liens in that chapter – the Advisory Opinion is
11 dispositive of the exact legal issue in this matter.

12    ***6.    Allowing a First Deed of Trust to Survive a Foreclosure Sale is an***
13    ***Unreasonable Restraint on the Alienation of Real Property***

14    Nevada Revised Statue 111.860(1) states:

15    The Legislature finds and declares that:

16    1.    The public policy of this State favors the marketability of real property and the transferability of
17    interests in real property free of defects in title or unreasonable restraints on the alienation of real property;
18 *See* NRS 111.860(1).

19    It is likely that without the filing of this lawsuit, defendant Wells Fargo would not have
20 commenced any foreclosure proceedings.  A notice of sale was then recorded *after* this lawsuit was
21 filed.  A foreclosure sale could have been held *prior* to Plaintiff purchasing the Property and *prior*
22 to the filing this lawsuit, which would have caused the Property to be placed back on market.
23 Defendants chose not to take this course of action.

24    Now, the Property cannot be sold and will remain vacant until the first deed of trust actually
25 forecloses on the Property or that security is extinguished.  The Nevada Supreme Court has
26 previously held a mortgage is mere security for a debt and a conveyance of real property.  *See Orr*
27 *vs. Ulyatt*, 23 Nev. 134 (1896).  This means the original borrower is still the title owner of the
28 Property.  Until defendant Wells Fargo acts on its rights to foreclose, the Property will remain with

the uninterested homeowner.

Unfortunately, this inaction by defendant Wells Fargo is impacting the ability for the Property to be resold and will continue to be a burden on the other homeowners in that community. This practice by lenders to wait for years to foreclose is an unreasonable restraint on the alienation of real property, and the district court should allow an HOA to foreclose on the Property and sell it free from any junior encumbrance including Wells Fargo's deed of trust.

## V.  CONCLUSION

Based on the foregoing, plaintiff respectfully requests that the district court deny Wells Fargo's motion to dismiss, and grant plaintiff's motion for summary judgment.

DATED this 15th day of April, 2013.

>Respectfully submitted,
>
>**MAIER GUTIERREZ AYON**
>
>*/s/ Luis A. Ayon*
>
>---
>
>LUIS AYON, ESQ.
>Nevada Bar No. 9752
>JOSEPH A. GUTIERREZ, ESQ.
>Nevada Bar No. 9046
>2500 W. Sahara Ave, Suite 106
>Las Vegas, Nevada 89102
>*Attorneys for Plaintiff 7912 Limbwood Court Trust*

**CERTIFICATE OF SERVICE**

I hereby certify that service of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT, WELLS FARGO BANK, N.A.'s MOTION TO DISMISS WITH PREJUDICE THE PLAINTIFF'S COMPLAINT AND COUNTERMOTION FOR SUMMARY JUDGMENT** was made on this 15th day of April, 2013, via the Court's CM/ECF system to the following parties:

Chelsea A. Crowton, Esq.
WRIGHT, FINLAY & ZAK, LLP
5532 S. Fort Apache Road
Suite 110
Las Vegas, Nevada 89148
*Attorneys for Defendant Wells Fargo Bank, NA*

Michael E. Sullivan, Esq.
ROBISON, BELAUSTEGUI, SHARP & LOW
71 Washington Street
Reno, Nevada 89503

Richard J. Reynolds, Esq.
BURKES, WILLIAMS & SORENSEN, LLP
1851 E. First Street
Suite 1500
Santa Ana, California 92705
*Attorneys for Defendants MTC Financial, Inc. d/b/a Trustee Corps.*

/s/ Charity Barber
An Employee of MAIER GUTIERREZ AYON