# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| 7912 LIMBWOOD COURT TRUST, | Case No. 2:13-cv-00506-APG-GWF |
| Plaintiff, | |
| v. | **ORDER** |
| WELLS FARGO BANK, N.A., *et al.*, | (DKT. NOS. 96, 112, 113) |
| Defendants. | |

This case is one of many arising out of the foreclosure crisis in Nevada, which has resulted in disputes over the effects of a foreclosure sale conducted by a homeowners' association ("HOA"). Before me are the parties' cross-motions for summary judgment on the plaintiff's claims for wrongful foreclosure and to quiet title.

**I. BACKGROUND**

The property at issue, located at 7912 Limbwood Court in Las Vegas, Nevada, previously was owned by Sandra and Sonya Newton. (Dkt. #114-2 at 10.) The property was subject to a first deed of trust recorded in 2004, which identified Silver State Mortgage as the lender. (Dkt. #38-1.) In 2011, Silver State Mortgage assigned the deed of trust to defendant Wells Fargo Bank, N.A. (Dkt. #111-3.)

The property is subject to the 1995 Covenants, Conditions, and Restrictions ("CC&Rs") recorded by the HOA, Elkhorn Community Association ("Elkhorn"). (Dkt. #111-12.) In July 2010, Elkhorn, through its agent Angius & Terry Collections LLC ("A&T"), recorded a notice of delinquent assessment lien. (Dkt. #111-7.) The stated amount due as of July 1, 2010 was $686.87. (*Id.*) On August 20, 2010, A&T recorded a notice of default and election to sell, which listed the amount owed as $1,483.74. (Dkt. #111-8.)

In September 2010, Wells Fargo sent A&T a letter acknowledging receipt of A&T's default notice on the property. (Dkt. #96-1 at 30.) In the letter, Wells Fargo stated its position that liens for unpaid HOA assessments do not take priority over a first deed of trust. (*Id.*) Wells Fargo indicated that if A&T chose to sell the property, A&T should notify Wells Fargo of both the sale date and A&T's intention to pay off Wells Fargo's lien. (*Id.*) Wells Fargo also stated that if A&T was "claiming lien priority over our mortgage and [was] seeking a court order allowing the proceeds of the sale to be applied to [Elkhorn's] debt first, please inform [Wells Fargo] immediately so that Wells Fargo may take appropriate action to protect our secured interest in the property." (*Id.*)

In February 2012, A&T recorded a notice of sale which set the auction date for March 6, 2012 and identified the amount due as $3,451.29. (Dkt. #111-9.) At the sale, A&T directed that the following announcement be made prior to the auction:

> You are hereby being notified by the Association, the beneficiary, through its foreclosure agent, that the opening bid does not include the super-priority lien amount. That the super-priority lien amount will still be a lien on the property once the sale is completed. You are hereby being notified by the Association, the beneficiary, through its foreclosure agent, that said lien may affect the property, title to the property or value of the property. The purchaser buys this property with full knowledge and understanding of the same.

(Dkt. #111-14.)[1] The plaintiff was the winning bidder. (Dkt. #111-10.)

---

[1] The plaintiff objects, in a footnote, that this evidence was disclosed after the discovery cut-off date in the Scheduling Order. The plaintiff does not cite to any law supporting exclusion of the evidence. It therefore consents to denial of its objection. LR 7-2(d). Moreover, to the extent the disclosure was late, it was harmless. The discovery cutoff date was September 25, 2013. (Dkt. #45 at 2.) Wells Fargo issued a subpoena duces tecum to A&T on September 11, 2013, and it was served on A&T five days later. (Dkt. #54-1; Dkt. #52.) The plaintiff did not object or move to quash the subpoena even though it set a response date after the close of discovery. A&T did not respond to the subpoena, so Wells Fargo moved for the court to require A&T to show cause why A&T should not be sanctioned. (Dkt. #54.) On October 17, 2013, Wells Fargo withdrew the motion because A&T provided the requested documentation. (Dkt. #56.) Wells Fargo then attached this evidence as an exhibit to its summary judgment motion filed on October 25, 2013. (Dkt. #58-1.) Wells Fargo produced the new documents to the plaintiff as a supplemental disclosure under Federal Rule of Civil Procedure 26(a)(1)(A) on November 5, 2013. (Dkt. #65-1.) The plaintiff obtained the documents within approximately one month after the close of discovery and in time for it to respond to the summary judgment motion. Further, the evidence was disclosed long before the parties agreed to the stay to await the Nevada Supreme Court's *SFR* decision. The plaintiff has never sought to reopen discovery in relation to this evidence, nor has it identified any prejudice. The plaintiff was in attendance at the auction and has not disputed the announcement was made, so the evidence from A&T was not a surprise. I therefore will not exclude the evidence.

1  A trustee's deed upon sale was recorded on March 16, 2012 (the "2012 deed"). (Dkt. #111-10.)  The 2012 deed stated that A&T, as Elkhorn's trustee:

> does hereby grant and convey, but without warranty express or implied to [the plaintiff], that portion of [Elkhorn's] right, title and interest secured by the non-priority portion of its lien under NRS 116.3316 in and to [7912 Limbwood Court].

(*Id.*)  The 2012 deed recited that the conveyance was made pursuant to the CC&R's and Nevada Revised Statutes 116.3116 *et seq*. (*Id.*)  Finally, the 2012 deed stated the plaintiff was the highest bidder and paid $5,100.00 "in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then due and payable to the association claimant in excess of the Super-Priority Lien set forth in NRS 116.3116 *et seq*." (*Id.*)

On October 5, 2012, Wells Fargo and MTC recorded a notice of default and election to sell based on the Newtons' deed of trust. (Dkt. #111-5.)  The sale was set for March 8, 2013. (Dkt. #111-6.)  At the sale, defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") purchased the property for $120,207.00. (Dkt. #111-11.)  Freddie Mac thereafter recorded a trustee's deed upon sale showing it purchased the property from Wells Fargo. (*Id.*)

The plaintiff brought suit in Nevada state court on March 5, 2013, against Wells Fargo and others to quiet title in the property. (Dkt. #1-1.)  The action was removed to this court, and the plaintiff thereafter filed an amended complaint against Wells Fargo and Freddie Mac,[2] asserting claims for wrongful foreclosure and to quiet title in the property. (Dkt. #1; Dkt. #33.)

Wells Fargo and Freddie Mac moved to dismiss the amended complaint, arguing that a first deed of trust is superior to an HOA lien and foreclosure on the super priority portion of the HOA's lien does not extinguish a first deed of trust's security interest in the property.  Judge Pro, the then-presiding district judge in this case, denied the motion. (Dkt. #59.)  Judge Pro predicted that the Nevada Supreme Court would interpret the relevant statutory scheme to mean that foreclosure on an HOA super priority lien would extinguish all junior liens, including the first deed of trust. (*Id.*)

---

[2] The amended complaint also asserted claims against defendant MTC Financial Inc., but those claims were dismissed. (Dkt. #33; Dkt. #59.)

1  Following Judge Pro's ruling, the parties agreed to stay the case pending a ruling from the Nevada Supreme Court in two cases that raised the same issues regarding the effects of a foreclosure of an HOA super priority lien. (Dkt. #87.)  On September 18, 2014, the Nevada Supreme Court issued its decision in *SFR Investments Pool 1 v. U.S. Bank*, holding that foreclosure of an HOA super priority lien extinguishes all junior liens, including a first deed of trust. 334 P.3d 408 (Nev. 2014) (en banc).

After the *SFR* decision, the stay in this case was lifted and the parties agreed to a schedule for briefing cross-motions for summary judgment. (Dkt. #88, #92.)  Judge Pro recused from the case due to his impending retirement, and the matter was assigned to me. (Dkt. #93, #94.)  The parties' cross-motions for summary judgment on the plaintiff's claims for quiet title and wrongful foreclosure are now before me.  Because the parties have not adequately addressed the conveyance language in the 2012 deed, I will order supplemental briefing.

## II.  DISCUSSION

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

     Under Nevada law, any person may bring a claim against others who claim an estate or interest in real property "for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. In an action under § 40.010 to quiet title to real property, "each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (en banc) (quotation omitted).

     Here, the plaintiff claims title through the HOA foreclosure sale and the 2012 deed. According to the plaintiff, the HOA foreclosed on its super priority lien, thereby extinguishing the first deed of trust under *SFR*. The plaintiff therefore contends the 2012 deed conveyed superior title to it. The defendants respond that the HOA foreclosed on only the non-priority piece of its lien and therefore the 2012 deed does not convey superior title. According to the plaintiff, an HOA cannot split its lien and foreclose on only one portion of it. Rather, the plaintiff contends, the HOA foreclosed on its super priority lien by operation of law and it could not waive the lien's super priority status regardless of how it characterized the sale.

     If an HOA can split its lien and choose to enforce only the non-priority portion, there is no genuine issue of fact that the HOA here foreclosed on only the non-priority portion. A&T directed that the following announcement be made prior to the sale at the auction:

> You are hereby being notified by the Association, the beneficiary, through its foreclosure agent, that the opening bid does not include the super-priority lien amount. That the super-priority lien amount will still be a lien on the property once the sale is completed. You are hereby being notified by the Association, the beneficiary, through its foreclosure agent, that said lien may affect the property, title to the property or value of the property. The purchaser buys this property with full knowledge and understanding of the same.

(Dkt. #111-14.) The 2012 deed confirms that the HOA intended to sell only the non-priority portion of its lien because the deed expressly states that only "that portion of [Elkhorn's] right, title and interest secured by the non-priority portion of its lien" was conveyed. (Dkt. #111-10.)

     If an HOA cannot split its lien and enforce only the non-priority portion, the parties have not adequately addressed whether the 2012 deed complies with Nevada Revised Statutes § 116.3116 *et seq.* to validly convey title through foreclosure of a super priority lien. Under

1  § 116.31166(3), a sale of "a unit" conducted "pursuant to NRS 116.31162, 116.31163 and
2  116.31164" will vest title "of the unit's owner" in the purchaser "without equity or right of
3  redemption."  After a sale is conducted pursuant to § 116.31164(3)(a), "the person conducting the
4  sale shall . . . [m]ake, execute and, after payment is made, deliver to the purchaser, or his or her
5  successor or assign, a deed without warranty which conveys to the grantee all title of the unit's
6  owner to the unit."

7  Here, the 2012 deed did not purport to convey to the plaintiff all of the unit owner's title
8  to the unit.  Instead, it expressly conveyed only the HOA's non-priority interest in its lien on the
9  unit.  Although the parties raised issues relating to the announcement A&T made before the sale,
10 they have not addressed the significance of the language in the 2012 deed.  I therefore direct the
11 parties to file supplemental briefs addressing only whether the 2012 deed validly conveyed title to
12 the plaintiff.  For purposes of the supplemental briefs, the parties should assume that the HOA
13 cannot split its lien and foreclose on only one portion of it.

14 **III.  CONCLUSION**

15 IT IS THEREFORE ORDERED that the parties shall file supplemental briefs on or before
16 July 20, 2015.  The parties shall file response briefs on or before August 3, 2015.

17 DATED this 6th day of July, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE